06-2613, Ms. Friedland, and Mr. Eberhardt. Before you start, I would also like to just note for the record that on behalf of the yet again, every year I make a request of those, usually Bill Bradley and others, who set up the schedule for the next year. Can I just have at least one sitting with Judge Michel? That's how highly I think of him, and I know that's how highly my colleagues think of you as well. Thank you very much, Paul. Thank you. May it please the Court. My name is Lisa Friedland, and I'm here on behalf of Clayton Lilly. Excuse me for the looking around, but I think I'm not tall enough to see over the microphone today. As Judge Becker used to say, just roll the thing down just a little bit. Or I can stand up on the tiptoe. No, you can just crank it down a little bit. That's okay. I'm a short person. Tell me, say. Well, Your Honors, we're here today in this case on a single issue that was granted in the Certificate of Appealability, and that is whether the District Court erred in failing to hold an evidentiary hearing on Clayton Lilly's claim that his trial counsel was ineffective in properly advising him about the nature of the jury trial right and the consequences of waiving it. Let me work. In one sense, at first blush, it makes some sense to say that, hey, there should have been an evidentiary hearing. But let's assume for the moment that that's a problem, although one could argue it's not. What is the possible prejudice that could have occurred to Mr. Lilly here? Was there any evidence that might not have been presented? I mean, you almost have to say, by electing a judge trial as opposed to a jury trial, that the judge, in effect, would not give you the same good justice a jury would. Well, Your Honor, I'm not sure that I agree with you, but I think that is the meat of the legal argument, is what standard should apply to determining prejudice. As you know, in my brief, I've argued that the standard enunciated by the United States Supreme Court in Helbie Lockhart and adopted by this court in Weeks v. Snyder should be the standard. But Hill was a case, was it not, where there was a plea versus a trial? It absolutely was, but the waiver involved in Hill is indistinguishable from the waiver here. It was the waiver of the constitutional right to be tried by a jury. The fact that it was a plea versus a jury... But it's also... It goes much further, though, Ms. Freeland. I mean, the waiver of the plea does... The plea of guilty goes much further than the waiver of the jury trial. I mean, you're done. It's over. Well, I agree with you that a guilty plea means that it is done and over, you are convicted. But I do not agree that, in principle, on principle, the waiver of the jury trial is the waiver of the jury trial. And whether it is by guilty plea or, as some people would think, by slow plea in front of a judge, this case was about the waiver of a jury trial right. And the Supreme Court has been very clear about what's required when you waive a jury trial right. They didn't say when you waive a jury trial right because you're pleading guilty. They didn't specify that it's when you're waiving a jury trial right because you're electing for a bench trial. But the waiver of the constitutional right to a jury trial must be made in a knowing, intelligent, and voluntary manner. I think we would all agree on that. And that is exactly the same standard for guilty plea. And it must be made with an understanding of the relevant circumstances attendant to a jury trial and the consequences of waiving it. So although I can agree with you in principle that there is a difference between a guilty plea and a jury trial, there is no difference between the waiver of the constitutional right to a jury trial in those two circumstances. But ultimately, the court in Hill found that there wasn't a need for an evidentiary hearing because, or it wasn't warranted because the evidence against Hill was overwhelming. There was nothing that could have happened that would have changed the verdict, the court would have. No, Your Honor. The court in Hill found that there was no prejudice because the petitioner there had established that he would have insisted on going to trial. And that has been repeated in Weeks v. Snyder and cases throughout the circuits. The prejudice standard under Hill is not that you establish a reasonable probability that you would not have been convicted at the jury trial, but instead establishing a reasonable probability that you would have not pled guilty and insisted on proceeding to a jury trial. And that standard, identically, was adopted by this court in Weeks v. Snyder. Ms. Freeland, on page one of your reply brief, you say that the only way to determine whether counsel effectively advised Mr. Lilly is to determine whether counsel sufficiently advised Mr. Lilly of the relevant circumstances and likely consequences of waiving his right to a jury trial. That's right. Is it your position that that is the standard that we should adopt in providing information by counsel to a defendant prior to the waiver of a jury trial? The standard that is in my brief is directly out of the Supreme Court's case of rape. I understand that. Yes, I do believe that is the standard. There's two parts to it. One is advice about the nature of the jury trial right, and the second part of it is the consequences of waiving that right. And that is just black letter law from the United States Supreme Court about the waiver of constitutional rights. What would you say would be fundamentally sufficient in an explanation by counsel of the benefits of waiving the right to trial by jury and being tried by a judge? How would you do that? How would you explain? How would one of your assistant public defenders explain that? How would you explain that? I would tell you how I would do it, although I know the case law doesn't require that the explanation be the one that I would give, just that it be reasonable, reasonably confident. But first of all, the nature of the right is always going to be the same. What changes from case to case is the consequences from the particular facts of your case and waiving it. In this particular case where the defense was credibility of police officers, credibility of a confidential informant, end of story, that's it. If I were dealing with a case and have before where there is a complex legal issue that you may not have confidence that a jury of laypersons would be able to distinguish that legal argument, I could see in that case advising someone for those reasons, we want a bench trial because we have a better shot with the judge of understanding this complex matter of law. In a case like the one we're talking about today... Okay, so the converse would be in a Lilly-like case... In a Lilly-like case, you need a jury. Okay, in a Lilly-like case, the converse would be if you have a motion to suppress, which is going to be heard by a judge, then you should never waive your right to a trial by jury. Is that what you're saying? No, that's not what I'm saying. But one of the things... But isn't that what you've said by saying that by virtue of the trial court finding that the police officer was credible and denying the motion to suppress, therefore that trial judge could not be impartial in looking at those same facts again. Under the circumstances of this case, many cases perceived a jury trial where none of the evidence that's going to be heard at the jury trial is heard at the suppression hearing. It just so happened that in this case, it was identical evidence. It was the same evidence... Well, it's going to happen a lot of times. If you're unsuccessful on your motion to suppress, at the case in chief, now in this case, it was heard all together, but the case in chief, there is a very, very strong likelihood that the judge is going to have to look and hear the same evidence that he already heard at the motion to suppress at the case in chief. Some of the same evidence. And my question is, isn't your standard inviting a practice that would mean jury trials or wherever there are motions to suppress are denied? Absolutely not. But if I can give one caveat, where the suppression issues require the trial court to assess the credibility of the very same witnesses, the same evidence that would be presented at trial, yes, that would be my practice and that would be a practice I would stand behind in training and advising others because once the judge has found the officers credible at the suppression hearing, going to a bench trial with a credibility defense is folly. It would never be a choice that I would make. Let me get you right. You're not saying that would be your practice. Are you saying that is your practice? I'm not a trial lawyer, your honor. Well, your office is. Today I'm the public lawyer. Is that your office's practice? We don't have a policy, nor can we or nor should we. Every case, as I'm saying, this case should have been has to be assessed on the facts and circumstances surrounding that particular case. In this case, my question was, I think you understood it was, I think you were very clearly inviting that kind of policy to be the policy that would be an acceptable policy for this court and other courts to review. Your honor, I must take issue only because one of the things that you learn from the case, and I will say true to it in my practice, there can be no policy when it comes to criminal defense. Every defendant, every case, every factual circumstance, the credibility of every officer, it has to be judged individually. I could never have a policy in my office that, you know, we're going to do jury trials in this case. We're going to do bench trials in this case. We don't have one, one size fits all. We have to take every person as they come through the door, assess the facts of their case, and advise them competently on the choices that are theirs, but to be made with our competent advice. And under the circumstances of this case, I have no hesitation in saying, had I represented Mr. Lilly at trial, he would have had a jury trial, or at least that would have been my advice to him. But in this case, I keep coming back to, okay, you keep saying there's no policy in our office. We will look at the consequences, and the consequences here, again, back to my first question. Assuming there was a constitutional violation, let's assume for the moment you're correct. Hill says, the assessment that you make in the end, or in the turn, will depend in large part on a prediction, whether the evidence likely would have changed the outcome of a trial. In other words, if he had, or whatever this person would have done, had he elected a jury trial, would it have affected the outcome of the trial? Can we predict that? If I, I can't answer that question directly, Your Honor. I would have to say that on a case where the defense is credibility, it's awfully hard to predict whether or not there's a reasonable probability that a juror of 12 independent people would reach the same conclusion that the judge did. Let me just read on from Hill. In other words, to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability... Are you on page where, 59? I'm sorry, on 59 right, the sentence under the citation to McMahon v. Richardson, the beginning of page 59. Okay. The second prejudice requirement, on the other hand, it begins, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that but for counsel's errors, he would have pleaded guilty... He would not have pleaded guilty and would have insisted on going to trial. And this prejudice standard is the one that any case that relies on... Because if he had gone to trial, there was a chance that there was evidence that would have got him off. Absolutely not, Your Honor. If you go on and you read the next paragraph... Well, I did go on. Okay. And the assessment, in large part, will depend on a prediction whether the evidence likely would have changed the outcome of a trial. This is the court in Hill saying, we're setting down this new standard, but in the large majority of plea cases where the claimed error is not that counsel's ineffective advice was to waive the right, but where counsel's ineffectiveness in the examples that the court in Hill uses here, where counsel's ineffectiveness was, for example, the failure to investigate, to find exculpatory evidence, or to unreveal an affirmative defense, where counsel's pre-trial ineffectiveness was of that sort, and that's what affected the decision of going to trial or not was the absence of some information, these are going to be judged differently, but where... But reading on in Hill, what he says is, similarly, where the alleged error of counsel is a failure to advise the defendant, so this is all fours in our case so far, then it differs here, is a defendant of a potential affirmative defense to the crime charge, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. Can you say that this constitutional violation, which we've assumed, would have caused the trial, had he gone to trial, to have been different? No. I see that my red light's on, but this is a critical point, and one that I need for the court to understand, at least from my perspective, whether you agree or not. There are a class of errors that can happen pre-trial, that counsel can fail, and the two examples in this paragraph you just read from in Hill are the failure to investigate, to discover exculpatory evidence, and the failure to properly advise the defendant about a potential affirmative defense. I put those in category A. Those are mishaps, incompetent, erroneous things that may happen that counsel does that may in some way affect whether a defendant pleads guilty or goes to trial, because they don't know the exculpatory evidence, they don't know the affirmative defense. Class B, and that's what Hill's talking about in the preceding paragraph, and that's what this case is, is where counsel's advice is to waive. It's not a failure in investigation. It's not a failure to say you have this defense or you have that defense. It's advice to waive, and that's what counsel in this case said. He advised the defendant to waive the constitutional right to a jury trial. That is a different category of incompetence. It's covered by the first paragraph that we just read together from Hill. The second paragraph that discusses exculpatory evidence and affirmative defenses is a different kind of advice. It's a different kind of error. Hill is focusing on where counsel's advice is to enter a plea or go to jury trial, and what Hill is saying is saying, yes, we're carving out this new standard for prejudice where all you need to show is a reasonable probability that you would have insisted to go to trial, but it's backing up and it's saying, but everyone, don't lose your heads. In the large majority of guilty plea cases, and remember, Hill v. Lockhart was the first case to apply Strickland v. Washington in the guilty plea context, so the court here is saying, in the large majority of guilty plea cases, we're still going with Strickland. You still have to show a reasonable probability that the trial, the outcome of the trial would be different, but in the small category of cases where it's erroneous advice on behalf of counsel whether or not to waive, in that small category of cases, this is to be the standard. Now we'll come back to the beginning, I guess perhaps to some extent, and I'll pick up with Judge Fischer's questions on the consequences if we were to rule in your favor, but at the beginning, you said counsel was incompetent or a lack of competence for having his client waive a jury trial. How is that incompetent? Under the facts and circumstances of this case, and let me just say, had there been an evidentiary hearing, we would know why counsel gave that advice and it would be a lot easier from his own words to argue competent or incompetent, but I'm talking about the circumstantial evidence in this case because we don't have direct testimony. The facts and circumstances surrounding this case, there could be no reasonable strategy for proceeding to a bench trial where your defense is the credibility of a confidential informant, your defense is the credibility of officers. It's circumstantial evidence that this was a wrong decision. There were no benefits, and one of the things I pointed out in my brief is neither the district court nor the government in its brief has pointed to a single benefit, and nor to Mr. Lilly, for waiving the right to a jury trial and going to a bench trial. Counsel, you've talked several times about affirmative defenses and you've said several times that here the defense would be the credibility, particularly of the police officers. I don't really understand how you're meaning the credibility of the police officers to constitute an affirmative defense. Are you suggesting that the jury would be told that the officers planted the drugs and that the defendant actually was not found in possession of the cocaine? No, Your Honor. I must have been misunderstood. The defense in this case was credibility of officers. It is not an affirmative defense. When I was speaking about affirmative defenses, that was from Hill versus Lockhart, where the court used as an example, if counsel's failure at the pretrial stage was the failure to advise about an affirmative defense, it would be in the category of cases where prejudice would be determined under the classic Strickland versus Washington standard. That's my only point about affirmative defenses. It's from an example in Hill v. Lockhart. My case is not an affirmative defense, but it also isn't in the category of cases where Strickland classically would apply, but rather is in the category of cases where the prejudice standard from Hill v. Lockhart would apply. Well, if we disagree with you and conclude that you have to show, or Mr. Lilly has to effectively plead, that he lost some advantage by waiving the jury trial right, I'm trying to understand what the defense would have been at the jury trial had there been a jury trial, and why would one conclude that that defense would be more likely to be accepted by a lay jury than by a trained judge? Well, Your Honor, I think that's the difficulty I was speaking to Judge Ambrose about in judging the probability. But you don't even have to answer that question in this case, because the district court judge had already found the witnesses credible. And so a defense attorney armed with that information could have said, you know what, we need a jury trial in this case. We must have a jury trial in this case. We can't have a bench trial when the bench has already told us that we're going to lose. That's my point. But in the larger sense, I think the credibility of police officers, and again, I don't have any empirical evidence. After the suppression hearing, the evidence is going to come in at a trial, whether it's a bench trial or a jury trial. The only difference would be that you would not be trying your case to a fact finder who had already rejected your defense. That's the crux of this case. He rejected the request for suppression, but that doesn't necessarily mean he's going to find somebody guilty if there's a defense that throws in doubt the basic fact of possession. But Your Honor, I agree with you in the general sense. In this case, it was the same evidence, which is why there's only one transcript. And he found the officer's recitation of what happened credible, and he found the defendant's recitation credible. It was the same defense. It's these officers planted drugs in my house because they entered there without me being there an hour before. It's that the confidential informant didn't tell the truth. The very same evidence. And that's why I don't think the court needs to have a broad ruling to resolve favorably this case, is because the facts and circumstances of this case are so precise. So your view is that it was grossly faulty advice that the defense counsel at trial gave, and that adequate prejudice should be presumed from the nature of the faulty advice? You got the first part right, but I don't think the prejudice should be presumed. I think that the court should reverse for an evidentiary hearing where Mr. Lilly would be given the opportunity to establish by a preponderance of the evidence before the district court that he satisfied the prejudice standard set forth in Hilvey Lockhart, which is that, but for counsel's advice to me to go to a bench trial, I would have insisted on a jury trial. Had I gotten proper advice about the consequences of waiving a jury trial under the facts and circumstances of my case, I would have elected a jury trial. That's the prejudice standard. That's what Mr. Lilly should have the opportunity to establish before the district court. And your honors, if he can't do it, if he's found incredible by the district court, I think you all know where that leaves me. Thank you. Mr. Lockhart, thank you. And your honors, I did not say before I started, although I did tell the court crier that I was hoping to reserve three minutes for rebuttal. If you want to hear from me, I'll come back. We'll give you three minutes. Good afternoon, your honors. Robert Everhart from the U.S. attorney's office for the appellee. When the search occurred in this case, the evidence in the record is that Mr. Lilly, who had a clothing, I think it was a used clothing or resale clothing store, um, is quoted by the officer saying these guys aren't buying these clothes. I have to support myself. Our position is very clear in our brief that there is no prejudice established in this case. And one of the advantages of this non jury trial that is kind of subtly in the record is that Mr. Lilly obtained a substantial sentencing benefit here from the district court. The district court at sentencing ruled that because the non jury trial started at the time, at the same time as the suppression motion did, as the hearing on the suppression motion did, that the government's request for an enhancement under section eight 51 was untimely. But Ms. Veland's point is, isn't he entitled to an evidentiary hearing? And why wasn't one done in this case at the very least entitled to an evidentiary hearing to explore whether her theory would hold up as to whether there, as to the prejudice that may have existed, should having ruled against him, the trial judge, uh, can go on and do the trial. If that's the case, that's no problem. But the defense counsel should have elected for a jury. The first response to that is the fact that there has not been a pleading in the district court of, uh, performance and prejudice. Um, this meeting is essentially one, which would you be here today if there was an evidentiary hearing? No, I obviously, if, if, if I had my druthers, there would have been an evidentiary hearing. Mr. Stocky as counsel would have testified, expanded upon his, uh, his affidavit. It's in the record. And, uh, and the court would have made a credibility determination. Um, I'm assuming that, uh, Mr. Stocky being a, an experienced attorney would have, uh, expressed his, uh, his, his normal practice. Uh, and we would have had an established, uh, uh, more supportive record of, of the waiver of jury trial. Which would you be here today also if the judge had conducted an extensive colloquy with Mr. Lilly when Mr. Lilly stated that he was willing to waive his right to a jury trial? Probably not. And I, I probably wouldn't be here if Mr. Mr. Stocky had, uh, filed a more extensive affidavit. Uh, as the court is well aware, uh, rule 23a does not require, in this court's decision Anderson does not require a colloquy. Um, additionally, uh, the, the affidavit that was filed by Mr. Stocky in this case was filed in response to the then existing record. Wouldn't that be a good suggestion? I mean, if we, if we, if there was a colloquy, if the court made absolutely clear on the record, you're waiving your right to a jury trial and here's what the consequences of this mean. The only problem I have with that, Your Honor, as, as Ms. Freeland has pointed out, individual cases, uh, present individual reasons for, uh, for waiving the right to jury trial. But when you enter a guilty plea, there's a colloquy, is there not? There's a colloquy with standard questions that are based upon case law, which establishes those items that are important for, uh, a determination of a validity of a waiver and an entry of a guilty plea. Is there any reason not to suggest that there be a colloquy? I don't know what this court's thinking on this has changed since Anderson, but, uh, there are other circuits as this court probably is aware of that have a mandatory, uh, requirement of a, of a colloquy. Um, and what the, the elements of that colloquy would be, uh, obviously, uh, Ms. Freeland has, has pointed out the Sixth Circuit case, uh, Martin, which, uh, uh, actually reflects upon the four elements that, uh, the Sixth Circuit saw as important. Um, there is, however, in this record, no assertion as to how and in to what extent, uh, Mr. Lilley asserts that, uh, his attorney didn't give him advice. Uh, there, it's, it's clear this court has denied, uh, uh, uh, a review of, of, uh, that aspect, uh, due process aspect of this issue of waiver jury trial. The waiver issue, whether or not there was a knowing and voluntary waiver is, is, is established and precluded. So the only issue would be if there has been a proper raising of anything more extensive than that issue in the district court. Our position is that there is nothing raised below that goes beyond the issue of whether or not Mr. Clayton voluntarily, knowingly waived his right to jury trial. And that is precluded by his failure to raise that on direct appeal. The direct appeal before this court was limited to the issue of whether or not there was a valid, uh, uh, denial of the motion to suppress. And, uh, that issue was actually, the measure to suppress is, is, is again, asserted in the 2255 motion, but Mr. Lilley's 2255 motion does not go into any detail as to how Mr. Stocky, if he was ineffective, was ineffective with regard to the waiver of jury trial. He asserts that he wasn't given, uh, uh, an opportunity to not waive. Do you know why there was no evidentiary hearing here? Because the district court determined on the basis of the existing record and the waiver of, or the affidavit of Mr. Stocky, that the record is clear that he did not, uh, suffer from a failure to knowingly and voluntarily waive his right to jury trial. And the record was clear because? Because he, he, he, uh, waived it on the record. He signed a written waiver of jury trial, which is what's required by rule 23A. Uh, Mr. Stocky did an affidavit, which was in response to the, the record reflects the fact that Mr. Stocky's, uh, affidavit is in response to the allegation that was filed in the district court. What is filed in this court and the enhancement that's made in this court by counsel for Mr. Lilley is that, uh, the additional advice and consultation is what Mr. Lilley really meant to say in the district court. Mr. Lilley didn't say that in the district court. He said counsel did not give him, advise him regarding his right to jury trial. Mr. Stocky did an affidavit that said I advised him of his right to jury trial. So, uh, on appeal, we have extended beyond what the record is in the district court. Was he represented below? He's represented by a new counsel. No, no. When he filed the complaint, the petition, was he represented in connection with that filing? Counsel was appointed in 2005 after his first and second amended petition. And she, and counsel did file additional, uh, pleadings in the district court. So he was represented by counsel, uh, halfway through the process. Um, he was also represented by a different counsel on direct appeal, uh, when he did not raise the issue of his, uh, waiver of jury trial. Uh, Mr. Everhart, isn't there, isn't the question here as to upon the issue that the counsel has raised as to whether or not he's entitled to a hearing, uh, isn't the question as to whether or not the court, the district court could determine based on the record, whether or not he could show any prejudice? That, that's correct. Isn't that really the question? That's correct. And under the Strickland two-part test, if you can't show both parts, you lose. So if you clearly can't show one part, you're not going anywhere on an ineffective assistance of counsel claim. Right. Uh, I, uh, clearly the Strickland test is what the district court applied. Uh, I pointed out additionally, the district court was not presented with this enhanced, uh, argument with regard to the waiver, but was responding to Mr. Lilly's argument that he was not advised of his, of his, uh, right to jury trial. But yet he, he signed a written waiver. He acknowledged the waiver. He was advised that, that of his right to jury trial at his arraignment, uh, at the beginning of the non-jury trial. Uh, the record is, was, is fairly complete on the fact that he had knowledge of his right to a jury trial, but upon the prejudice standard, the district court was clear that absent an assertion that, uh, a jury trial is better than a non-jury trial for everybody in every case under every circumstances. And that being some sort of a standard, there is no establishment of prejudice in this record. Is there any indication that he was advised particularly that the jury would have to be unanimous? I don't think there's anything like that in the record. Or that he through counsel could participate in the selection process and perhaps block some jurors thought for one reason or another to be disadvantageous. I'll readily admit, uh, Judge Michel, that the other three factors that are in the Martin case, unanimity requirement, participation, and that the judge is going to be the fact finder are not explained on the record to this individual. Now, when you said earlier that he was advised to, uh, by the court in the brief colloquy before the suppression hearing slash bench trial, he didn't say anything. As I recall the record, uh, the, both lawyers were asked, is this a waiver case? And each stood up and said, yes, that's correct. But Lilly himself was neither advised of anything nor spoke in that colloquy. As I recall, is my recollection correct? You're correct. And on the waiver form that he signed after the combined hearing and trial, it didn't say anything at all about the, what I'll call the Martin particulars. Uh, so, uh, if, if those particulars have to be a part of, uh, what he's told and what he acknowledges, neither the colloquy nor the waiver form seem to suffice. Do you agree? Uh, I would suggest that the waiver form is sufficient to establish that he had knowledge of his right to jury trial. The particulars of the right to jury trial... By the way, is the waiver form in the record? Yeah, it is. Yes. Yeah, it is. The particulars as to the, as to the, uh, the Martin factors are not in the record. Um, what I would assert is that if this court accepts the argument from counsel here on behalf of Mr. Lilly, absent a colloquy, there would be required, uh, uh, evidentiary hearing in every case in which a 2255 petitioner asserts, uh, I was not adequately advised of my, my, uh, right to jury trial before I waived my... What about Ms. Freeland's limitation that, uh, uh, it wouldn't be every case. It wouldn't be every possession case. It would be every possession case where the evidence on the suppression and the evidence on the merits was identical. Well, I, I... That might be a meaningful limit in terms of the quantity of cases that would require evidentiary hearings. Well, certainly this is the type of case, uh, and, and, uh, experienced prosecutors, experienced defense attorneys, uh, in state court practice used to be called a slow plea. Uh, this is a case where the outcome of the suppression hearing is really the determination of the, of the case. And I would respectfully suggest that this record, and there's nothing to indicate that the cross-examination would be any different in front of a judge than in front of a jury, that this is going to be an identical record. This record reflects very close to being a harmless error analysis, Your Honor, in my view, because, uh, 162, uh, grams of, of crack cocaine that were, uh, discovered in this And the whole focus of counsel was to suppress that evidence and to attack the search warrant and attack the search. And that was what the basis and focus of the direct appeal when new counsel came into the case on direct appeal, new counsel reviewing the record, reflecting the same, uh, items that, uh, Your Honor has, has noted, decided that the main issue was again, the suppression of the evidence. This is the type of case that focuses on, uh, excluding that evidence. And that is where the defense counsel, um, uh, saw the, saw the real issue for Mr. Lilly. Uh, getting back to the sentencing issue, uh, Mr. Lilly got the benefit of a, of a sentence that was well below the potential 30 to life sentence, uh, 188 months is a significant sentence, but had the, uh, district court judge not ruled the government's, uh, motion under 851 to be untimely, uh, Mr. Lilly would have faced, uh, uh, 240 months. So there was a benefit to him by proceeding non-jury here. And I think that, uh, this record is adequate to establish that Mr. Lilly was counseled appropriately on that, that issue. The two arguments that, uh, counsel makes in their brief, first, I think it's footnote five in the original brief and footnote one in the reply brief. You said that those arguments were not before the district court. Before the district court was the flat out issue stated as, um, Mr. Lilly was not advised of his right to a jury trial by his counsel. So the way that through those footnotes in their briefs that counsel has expounded on that bare allegation were not before the district court, but if they had been, if they had been before the district court, uh, do you think that those reasons in and of themselves would have been enough to, uh, grant a hearing? Uh, I, I think that the, the course of events in the district court would have been different. I think that the affidavit that Mr. Stockey prepared would have been different, that the government probably would have gone to Mr. Stockey as counsel and said, did you advise him of the, of the, uh, the, uh, factors of unanimity? You can participate in the, in the selection process and that the judge is going to be the finder of fact. I think if there were expansion by Mr. Lilly and his counsel, uh, amendments that went into those factors, the government would have responded and, and, and made that kind of a record, um, whether it would be by hearing or by affidavit. Our argument is by affidavit would have been sufficient. And the affidavit that Mr. Stockey prepared and filed, uh, under, under oath was based on the allegations of the then existing record. Uh, the record up here is a little different. What about the allegation, I think I recall this from the, uh, pleading, uh, that Lilly says that Stockey told him that if he waived the jury trial right, that the trial judge at the bench trial would acquit him. Now, perhaps that's a far-fetched, uh, allegation and maybe you would say that it's so inherently unlikely that it should be deemed frivolous, but didn't he say that among other allegations in his paper? Um, he did assert that there would be a favor, more favorable outcome that actually happened. Um, but he says that Stockey told him that. Well, Stockey's affidavit doesn't meet that allegation at all, as I recall. Why doesn't that alone justify an evidentiary hearing? So we can join issue on exactly what Stockey says he said versus what Lilly claimed Stockey said. Well, that allegation I would suggest doesn't go anywhere near what waiver of a jury trial is in terms of the elements that, uh, the Sixth Circuit has pointed out. Well, except that it suggests that it's more advantageous to be in front of this judge than in front of 12 peers. Well, uh, getting into policy and, uh, and approaches, I agree with, uh, Ms. Friedland to the extent that every case is unique. Now, whether or not Mr. Stockey said, I think judge in this district court case is going to be more favorable to the suppression motion. And if we win the suppression motion, you're going to be acquitted. Um, you know, as a prosecutor, I've always been conscious of the fact that, uh, we can't as prosecutors interfere in the attorney client relationship. And, uh, would the district court be able to, in a colloquy, go through all the potential variations on advice that an attorney might give to a client as to why a waiver of the jury trial might be an appropriate thing in this particular case. You know, this judge has a reputation for this. This judge has a reputation for that. And those discussions would go on and, and between counsel and client on a regular basis, uh, is the colloquy now to, required to expand to every potential, uh, influence that the client has from counsel as to why in this particular case, in this particular type of situation, with this particular client at this time in history, it's a good thing to, to waive jury trial. I, I, I would suggest opening up that door would be a, a, a, not a good idea. Thank you very much. Thank you. Thank you, your honor. Um, I, I just want to touch on a couple of the questions that were asked and, and maybe answer them, uh, hopefully not make it more complicating. First of all, with respect to the benefit that Mr. Lilly got as a result of this jury trial, Mr. Heberhart referred to a break at sentencing. And, um, that was because Judge Block found that the 851 notice of prior convictions had been filed late. That finding was made after the trial in his tentative findings for sentencing. So that benefit could not possibly have been a benefit that was part of counsel's equation. Um, it was actually a fluke, um, a mistake by the government. But even if the 851 had been filed, um, it would have enhanced Mr. Lilly's mandatory minimum from 10 to 20 years. But under the guidelines, he was deemed a career offender. His guideline sentencing range was 360 months to life, 30 years to life. And he got, he got what here? And Judge Block downwardly departed under sheet to 188, finding that his criminal history significantly overstated his, um, uh, chances, likelihood of recidivism. So I think that is not a benefit. And one of the points I hope that the court will look at when assessing, um, perhaps you don't have to address whether this was competent or not, and you'll just send it back for an evidentiary hearing, which would be my hope. But certainly the fact that neither the district court nor the government through years and months has been able to identify a single benefit to Mr. Lilly for this non-jury trial, I think is telling about the competence of the advice that he was given. Well, does he have to, Mr. Eberhardt really doesn't have to identify a benefit. You have to identify a prejudice. Well, um, I think the government's first argument is that this is sound strategy. So we don't even, we don't even get to confidence. Let's assume that we disagree with him, but it's the ball still in your court, isn't it? I believe the ball is in my court on prejudice. I just believe that the standard is the Hill standard. Um, and, and I know that we've read the case back and forth. I don't feel that I'm going to be able to convince you of that in the next two and a half minutes. Um, but I certainly hope that you will all go back and take a look with a second eye at Hill, thinking about the words that I've said here today about the category of cases that are in and the category of cases that are out. Yeah, my own personal views. I don't think Hill or Weeks helps you a whole lot here. Um, and I appreciate that. I just have to say that whether you believe that or not, I will have to wait and see what's between the waiver of the guilty plea in one context and the waiver of a jury trial in the one context and the waiver in the next. Um, but that being said, um, I also wanted to talk about, uh, Judge Fisher asked a question about whether the district court resolved this finding. No evidentiary hearing was warranted because there was no prejudice. And in fact, the district court never got to the issue of prejudice that we're speaking of here today because the district court said that the record absolutely conclusively determined that Mr. Lilly was properly advised, properly advised of his right to a jury trial. And so the district court actually didn't get to that question. My final point. Isn't your problem, isn't Mr. Lilly's problem really the record? I'm sorry. Isn't Mr. Lilly's problem really the record based on what you're trying to argue? You've made an excellent argument, but we are, you know, like it or not, your client is stuck and we're stuck with this record. You're right, Judge Fisher. The record is what the record is. And I never come up here thinking I can do a thing about what the record is. The problem is, in this case, is that it is nearly impossible. And remember, reasonable probability of a different outcome. It isn't even a preponderance of the evidence standard. It's much lower for a court that hasn't seen the witnesses, that hasn't viewed the credibility of the officers to make a determination in a case like this, that there is no reasonable probability that the outcome would be different, would be requiring the three of you to say that 12 jurors who never took the jury box would have heard this evidence and believe these officers. And I just don't see how that can be done without seeing the witnesses. This is purely credibility. This is not a question of inferences that can be drawn. Isn't that part of what the district court had to do when it made the determination that it made? It found the witnesses credible at the suppression hearing. Yes, it did. Also at the 2255 stage. It never reached the, the district court never found that Mr. Lilly was not entitled to an amendment or relief because he could not establish prejudice. That being a reasonable, reasonable probability of a different outcome. Never reached the issue. Never ruled on it. Mr. Lilly was represented pro se until he filed a second supplemental motion under Booker and Blakely, at which point I was appointed. The only pleading I filed on Mr. Lilly's behalf, because it was made clear to me that I would not be given an opportunity to amend, was a motion to reconsider that was filed after the district court's memorandum opinion. You just stated a second ago, in answer to Judge Fisher, that could we three as a panel believe that all 12 jurors would, could reasonably come to the conclusion that they would believe the credibility of the officers. But it's just the opposite, isn't it? Don't you have to believe, you have to show that the, there's a reasonable chance that the jury would come to the opposite conclusion. That is, they would believe Mr. Lilly. Right. But to reject that, as I took Judge Fisher to be saying he would, to reject that, it would require the three of you to find that I can't make that showing. So it's a double negative. I mean, maybe you wouldn't have to go so far as to stay credible. Who has the burden? I mean, Mr. Eberhardt clearly doesn't have the burden. I have the burden of showing, if we live in the world where the classic Strickland prejudice is required, I have the burden of showing that. I would like to have that burden after an evidentiary hearing, if I have to have that burden at all. Yes, I have that burden. My point is, it's awfully difficult. And perhaps this is a principled reason for why Hill should be the standard, is because it is awfully difficult to establish that there's a reasonable probability of a different outcome in a case where the jury never took the box and never had an opportunity to assess credibility. Every one of the 12 of them could have had a different feeling. And I think that those of you who have been in district court and have seen jury trials will know that sometimes verdicts surprise you. Sometimes jurors don't believe police officers. Sometimes they reject the testimony or the hearsay testimony of confidential informants who have offered their information only to get a break in their own case. But on this record, you have to show, it's your burden to show, that there is a good chance that the outcome would have been different before a jury. If that isn't your burden, then we're all in trouble. My burden, and I know I don't want to beat a dead horse, but I believe my burden is to show that my client, had he been properly advised, would have made a different choice and would have elected for a jury trial. But again, if you're living in the regular Strickland standard and not the Hill standard, it is my burden to make that showing. Final question is this. Yes, we have Anderson. Sixth Circuit and Martin didn't make it a mandate for judges on a colloquy, but made a strong suggestion that the court, at the very least in the colloquy, note about four things, among which a jury has to be unanimous, et cetera. Any comments on those two cases? As to what the, if anything. I believe that- It should be done, from a process perspective. I believe that there should be a court-required colloquy. I believe that the written waiver, where there is going to be one, should be entered prior to, as opposed to after the jury trial, as it was in this case, because everything would be much clearer. As a matter of supervisory power being exercised, or as a matter of constitutional requirement? As a matter of supervisory. I don't think that I could argue that, as a matter of constitutional law, that that would be a requirement, but I think it's a fair flowing from Rule 23, and certainly in cases like this, where you see how things can go amok. When it doesn't happen, I think that it would be appropriate under the court's supervisory powers. But I will say this. Whatever the court does, whatever the court tells a defendant, it will not change what an attorney has to tell a defendant, and whether an attorney's advice is competent. A court colloquy may clear up some questions, some mistakes that counsel may have made, but in an ineffective assistance of counsel case, as this case comes to this court, the colloquy may help, but it won't resolve the issues. And in closing, I'd just like to say that I'm here today because several of your colleagues granted a Certificate of Appealability in this case, allowing permission to appeal. As you know, it's not an appealed right. I would argue that in any case where the Court of Appeals has made a decision, that the defendant has made a substantial showing. You have a Certificate of Appealability. You know that it only takes one judge to grant it. Then maybe Judge Rendell, you'll have to thank her for me, made that decision. It's a decision that is applying a legal standard. Or Judge Smith, or whoever the other judge was. I don't know how... I wasn't on that panel. I think the certificate actually is signed by Judge Rendell. So if it's one judge... No, that's because a judge for every four months is the assigned person. It doesn't mean anything. Well, in any event, one of your colleagues made the decision that Mr. Lilly had made a substantial showing of the denial of a constitutional right. No, one of the colleagues had made... Maybe all of them had made a decision in granting it that it is a matter that reasonable people should think about and discuss as to whether there should be an evidentiary hearing. And I understand that. Which is why we have our argument here. My point is that the standard for granting the COA assumes some things. That there is a showing on the right, the Sixth Amendment right. Assumes that there's a... Just how... I think we're saying it differently. That there's a question. If there is a question... Not that there has been a showing. If there is a question, I think that is the type of case where an evidentiary hearing would be warranted. Because an evidentiary hearing is required unless the record clearly and conclusively establishes that there is no merit. And my point is just, it can't both clearly and conclusively establish that and be something that would encourage you to go further. I appreciate the extra time today. Thank you. Thank you to both counsel for very, very well presented arguments. We'll take the matter under advisement. Call the...